UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JULIE WILFONG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOISE, RYAN LEE, CORY L. STAMBAUGH, ROBERT S. RAINFORD, JORDAN P. McCARTHY, COY BRUNER, DOES I-X.,<br><br>Defendants. | Case No. 1:21-cv-298-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Julie Wilfong brought this action against several defendants asserting claims under 42 U.S.C. § 1983 for Fourth Amendment violations and state tort law. Defendants are the City of Boise, Ryan Lee in his official capacity as Chief of the Boise Police Department, and law enforcement officers, Cory L. Stambaugh, Robert S. Rainford, Jordan P. McCarthy, and Coy Bruner.

Pending before the Court is a Motion to Quash, Modify, and/or Issue a Protective Order (Dkt. 21) filed by the non-party movants, Ada County Clerk's Office, which is the custodian of records being sought in a subpoena duces tecum issued by Wilfong. The records Wilfong seeks through the subpoena are sealed.

**MEMORANDUM DECISION AND ORDER - 1**

The motion is fully briefed and at issue. For the reasons set forth below the Court will grant the motion to quash, so long as the records Wilfong seeks remained sealed by the state court.

## BACKGROUND

### 1. Factual Allegations

In the early morning hours of December 19, 2019, a SWAT team from the Boise Police Department conducted a raid on Wilfong's home, a 1984 Tioga Motorhome located in Garden City, Idaho. *Verified Compl.* ¶ 12, Dkt. 1. Members of the SWAT team used flash-bang grenades to gain access to Wilfong's home, scaring her and her dogs. *Id.* ¶¶ 13-14. Wilfong believed someone was shooting at her. *Id.* After gaining entrance to Wilfong's home, the police ransacked it, destroying property and throwing it outside. *Id.* ¶¶ 15-16. They also searched her vehicle and her phone. *Id.* ¶ 17.

During the search, the police demanded that Wilfong tell them where a certain Troy Green was. *Id.* ¶ 18. Green was apparently a suspect in a crime, but Wilfong was not. *Id.* ¶ 19. Wilfong had no significant relationship with Green, but she knew he lived in a trailer on the other side of the fence from Wilfong – and she told this to the police. *Id.* ¶¶ 20-22.

After learning which trailer belonged to Green, BPD personnel then obtained a warrant to search Green's trailer, and he was later arrested. *Id.* ¶¶ 22-23. The

police also handcuffed Wilfong and took her to the police station, where they held her for several hours. She was never charged with any crimes. *Id.* ¶ 25. Wilfong believes she was never a suspect relating to any potential crimes involving Green and maintains the police conducted the raid on her home without probable cause in violation of her Fourth Amendment rights. *Id.* ¶ 26.

### 2. Wilfong's Attempts to Obtain Information

Since before filing this case alleging Fourth Amendment violations, Wilfong has been attempting to obtain the underlying affidavit that resulted in the search warrant on her property. But she has been unsuccessful. Wilfong started with filing a public records request with the City of Boise. The City was cooperative but advised it was not the custodian of record—Ada County was.

Although aware that the records had been sealed by the state court in Troy Green's case, Wilfong thought it appropriate to file a Petition for Disclosure of Public Records, with the idea that the records could be reviewed *in camera*, and all parties would agree to be bound by the same terms of non-disclosure that bound the parties in the Green case. She therefore filed a Petition to obtain records in Ada County Case No. CV01-20-16703. *Petition*, Ex. A, Dkt. 23-1. In the Petition, Wilfong explained her interest in ascertaining whether law enforcement indeed had probable cause to conduct a no-knock raid on her home when the suspect was her neighbor, Troy Green. *Id.* ¶¶ 27, 28. She also promised to keep the information

MEMORANDUM DECISION AND ORDER - 3

confidential. Judge Norton heard argument and ordered the release of certain records that were still in the City's custody but found that the affidavit underlying the search warrant of her property was not in the City's custody, and thus she could not order the City to disclose it. *State Court Order*, Ex. B., Dkt. 23-2 at 9.

Although Wilfong still had not obtained the affidavit of probable cause underlying the search warrant on her property, she filed this action in July 2021, with the hope she could obtain the affidavit using traditional discovery methods in this case. Having learned that Green's case had been resolved (other than a pending Idaho Supreme Court appeal), Wilfong issued a federal subpoena duces tecum to the Ada County Clerk's Office, on February 10, 2022. The subpoena specifically relates to the state criminal case, CR01-19-52977, against Troy Green, which includes criminal counts of trafficking methamphetamine, felony possession of a controlled substance, felony destruction of evidence, unlawful possession of a firearm, misdemeanor possession of a controlled substance, and possession of drug paraphernalia. Specifically, as it relates to the criminal case against Troy Green, the subpoena requests the following documents:

1. All warrants issued on or around December 18 or 19, 2019.
2. All affidavits of probable cause for such warrants,
3. All audio recordings and minute entries showing a court review of the affidavits and issuance of the warrants.
4. All returns of service and inventories of the warrants.

**MEMORANDUM DECISION AND ORDER - 4**

*Subpoena*, Dkt. 21-1 at 7.

After Wilfong served the subpoena, an Ada County Records clerk suggested that a motion to unseal should be filed. Wilfong says she filed a motion to unseal, and such request was denied. *Pls' Resp. to Mot. to Quash*, p. 3, Dkt. 23. But the state court decision Wilfong attaches to her response refers only to "two form records request for disclosure of sealed search warrants (and supporting materials)" in the Green criminal case. The state court denied "the two form records requests" on the basis that the matter was "not appropriate for disposition by a public records request because the records sought are sealed records, and therefore they are not public records that can be disclosed by such a request." *State Court Order*, Ex. C, Dkt. 23-3 at 1. "Rather," the court advised, "before the records can be disclosed, they must be 'unsealed' either in whole, or partially by appropriate redaction." *Id.*, Dkt. 23-3 at 2. The court continued by advising Wilfong on how to proceed with such a request to unseal by filing a motion to unseal, with notice to the parties in the case and any other interested person, and then the court would hold a hearing on the matter:

> Any person seeking disclosure, redaction, or unsealing of all or part of these sealed records must file a motion requesting such, with notice to the parties in this case and any other interested person in this case. After the filing of the motion, the court will hold a hearing in the matter. The moving party will need to give notice of the hearing to all parties to the proceeding and any other interested party, which should include, through counsel, the requesting parties here (Boise City and Julie Wilfong), the State, and the defendant.

**MEMORANDUM DECISION AND ORDER - 5**

*Id.*

It does not appear that any party has followed the procedure for unsealing records outlined in the state court order denying the request for the sealed records. On March 25, 2022, the Ada County Clerk filed this motion to quash the subpoena issued by Wilfong requesting the sealed records.

## ANALYSIS

The Ada County Clerk argues the subpoena should be quashed because (1) the subpoena is overly broad and (2) the records are sealed and protected from disclosure. The overbreadth of the subpoena can and should be remedied through an amended subpoena narrowing the document requests. But first the Court must contend with the fact the records Wilfong seeks have been sealed by a state court order. As explained below, the principles of comity prevent this Court from ordering the unsealing of records sealed by a state court. The subpoena therefore must be quashed while the records remain sealed.

Principles of "comity" require that this Court afford proper respect to state functions, which should not be disturbed absent extraordinary circumstances:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... [T]he concept ... represent[s] ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal

MEMORANDUM DECISION AND ORDER - 6

>rights and federal interests always endeavors to do so in ways that will not unduly interfere with the legitimate activity of the States.

*Resol. Tr. Corp. v. Castellett*, 156 F.R.D. 89, 92 (D.N.J. 1994), aff'd, No. CIV. A. 92-4635, 1994 WL 411809 (D.N.J. Aug. 2, 1994) (quoting *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971)). In *Castellett*, the plaintiff sought to enforce a subpoena on the New York District Attorney's office, seeking documents ordered permanently sealed by the state court. The plaintiff had moved the state court to unseal the records before seeking to enforce the subpoena in the federal court case, but the state court denied the application. Citing principles of comity, the court in *Castellett* denied the plaintiff's request to enforce the subpoena in the face of the state court's decision denying the request to unseal the records, concluding that it would not "use its subpoena enforcement powers to effectively reverse the state court's final ruling." *Id.* at 96.

Likewise, here, the Court agrees that its enforcement of the subpoena in this case would effectively reverse the state court's ruling denying Wilfong's form records request, raising sensitive comity issues. Such an order "would be deeply offensive to the notion of federalism, and one that should be avoided if at all possible." *Id.* at 94 (quoting *Shell v. Wall*, 760 F. Supp. 545, 546 (W.D.N.C. 1991) ("The Court finds the intrusion into what is a statutorily defined part of the state court…to be deeply offensive to the notion of federalism, and one that should be

**MEMORANDUM DECISION AND ORDER - 7**

avoided if at all possible."). Under the circumstance of this case, the Court declines to effectively act as state appellate court in reversing the state court ruling.

Critically, however, this matter seems to have a relatively simple solution that would allow Wilfong to obtain the sealed records she seeks, which are vital to her claims in this case: Wilfong may file a motion to unseal the records she seeks in the Green criminal matter by following the procedures specifically detailed in the state court decision denying her previous public records request. Once unsealed, it would seem Wilfong could use various avenues to obtain the records, including issuing a narrowed amended subpoena, or making another public records request. Likewise, the City of Boise, as an interested party, could file a motion to unseal the records in the state court criminal case in order to meet its discovery obligations in this case. *C.f. U.S. ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir. 1985) ("Federal district courts have ordered defendants to request release of their records from other parties maintaining custody of them so that the defendants could comply with discovery obligations in federal civil proceedings."). For these reasons set forth above, the Court will grant the Ada County Clerk's request to quash the subpoena so long as the records remain sealed.

## ORDER

**IT IS ORDERED that** the Motion to Quash, Modify, and/or Issue a Protective Order (Dkt. 21) is **GRANTED**.

MEMORANDUM DECISION AND ORDER - 8

DATED: June 3, 2022

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 9**